IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONDAL J. KINDRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:09-CV-169-WKW [WO] |
| | ) |
| CMI ELECTRONICS, INC., *et al.*, | ) |
| | ) |
| Defendants, | ) |

## MEMORANDUM OPINION AND ORDER

On June 16, 2011, Defendant/Third-Party Plaintiff Rondal J. Kindrick ("Mr. Kindrick") filed a Motion for Trial Setting, requesting an immediate trial setting for the remaining unadjudicated claims in this matter. (Doc. # 148.) On that same day, Crossclaim Defendant CMI Electronics, Inc. ("CMI") and Third-Party Defendants (collectively "Third-Party Defendants") Larry Branam ("Mr. Branam"), Today's Design & Manufacturing, Inc. ("TDM"), Diversified Integrated Systems Corp. ("DisCorp"), and Correctional Automation Corp. ("CAC") filed an Objection to Motion for Trial Setting. (Doc. # 153.) In their Objection, CMI and Third-Party Defendants (collectively "Remaining Defendants") argue that the court lacks subject-matter jurisdiction to hear the remaining claims in this case.[1] (Doc. # 153, at 1-4; *see*

---

[1] CMI and the Third-Party Defendants are represented by the same counsel, and responded to the jurisdictional show cause order collectively. (Docs. # 92, 98, 153.)

*also* Docs. # 92, 98.)  For the reasons that follow, the court retains supplemental jurisdiction and Mr. Kindrick's motion for a trial setting is due to be granted.

## I.  BACKGROUND

Before the court can address Mr. Kindrick's pending motion for a trial setting and the related jurisdictional issues, the procedural morass of this case bears examination.

This case began on March 3, 2009, when Plaintiff RBC Bank sued Mr. Kindrick and CMI to collect on a note Mr. Kindrick had guaranteed when he was president of CMI.[2]  (Doc. # 1.)  Then, Mr. Kindrick filed a crossclaim against fellow Defendant CMI and impleaded the Third-Party Defendants, alleging that those who now controlled CMI had assumed all of his liabilities with respect to the note.  (Doc. # 9 (Answer filed Mar. 18, 2009); *see also* Doc. # 29 (Am. Answer filed May 12, 2009).)  Finally, the Third-Party Defendants and CMI filed counterclaims and crossclaims against Mr. Kindrick, asserting that he had made various fraudulent misrepresentations as to the state of CMI's finances when he sold his interest in it.  (Doc. # 19 (Answer filed May 6, 2009).)

---

[2] CMI began bankruptcy proceedings in September 2009, and thus its involvement in this litigation was stayed pursuant to 11 U.S.C. § 362(a).  (Docs. # 40, 45.)  CMI's bankruptcy proceedings ended on June 15, 2011.  *See infra*.

On July 8, 2010, the court entered a Memorandum Opinion and Order granting summary judgment for Plaintiff RBC Bank on Mr. Kindrick's breach of guaranty. (Doc. # 89, at 4-10, 19.)  In that same order, the court denied Mr. Kindrick's motion for summary judgment on the Third-Party Defendants' fraudulent suppression and breach of contract counterclaims.  (Doc. # 89, at 10-19 (Mr. Kindrick's motion was granted with respect to Third-Party Defendants' fraudulent misrepresentation counterclaim.).) Third-Party Defendants did not file a dispositive motion with respect to Mr. Kindrick's claims against them.[3]   (Doc. # 89, at 2.)  On August 19, 2010, the court entered final judgment for RBC Bank against Mr. Kindrick in the amount of $271,069.65.  (Doc. # 107.)

On June 15, 2011, CMI's bankruptcy case was closed, and the bankruptcy trustee was discharged.  (*See* Doc. # 153, Ex. 1); *see also In re CMI Elecs. Inc.*, No. 09-bk-32602 (Bankr. M.D. Ala. filed Sept. 24, 2009).  A review of the docket from the bankruptcy proceedings shows that RBC Bank was listed in the Claims Register as a secured creditor of CMI, though it ultimately did not receive any assets

---

[3] CMI's participation in the litigation at that stage was stayed, so it likewise did not file a dispositive motion.

from CMI's estate.  *In re CMI Elecs.*, No. 09-bk-32602 (Doc. # 62, at 9, 10-11.)  On August 22, 2011, RBC Bank's claims against CMI were dismissed with prejudice. (Doc. # 168.)

With RBC Bank's claims extinguished, the parties are due to be realigned, and the case is due to be restyled.  *See City of Indianapolis v. Bank of City of New York*, 314 U.S. 63, 69 (1941) ("It is [the duty] of the lower federal courts[ ] to look beyond the pleadings, and arrange the parties according to their sides in the dispute." (internal quotation marks omitted)).  Mr. Kindrick now stands as Plaintiff in this action, pursuing claims for breach of contract and fraud against Remaining Defendants. Remaining Defendants also retain their surviving counterclaims and crossclaims against Mr. Kindrick.  (Doc. # 89, at 19.)

Following resolution of RBC Bank's claims against Mr. Kindrick and in anticipation of RBC Bank's dismissal from the case, the court entered an order directing the remaining parties to "show cause why this case should not be dismissed for lack of federal subject-matter jurisdiction."  (Doc. # 90.)  The court also put the parties on notice that "[i]t is unclear . . . whether, after realignment of the parties, diversity would exist between the remaining parties."  (Doc. # 90.)  Mr. Kindrick responded, arguing that the court retained diversity jurisdiction over the remaining parties. (Doc. # 91.)  Remaining Defendants responded, arguing that the court lacked

subject-matter jurisdiction because there was not complete diversity between the remaining parties. (Doc. # 92.) Mr. Kindrick replied in opposition to Remaining Defendants' diversity jurisdiction arguments. (Doc. # 93). On that same day, however, Mr. Kindrick filed another response with the following heading: "**JURISDICTION OF THIS MATTER IS PREMISED IN 28 U.S.C.A. § 1334(b), NOT DIVERSITY JURISDICTION.**" (Doc. # 94, at 1.) Remaining Defendants replied noting the contradictory nature of Mr. Kindrick's positions regarding CMI and subject-matter jurisdiction, and argued that § 1334(b) "relating to" bankruptcy jurisdiction did not exist in this case. (Doc. # 98.) Subsequently, the court entered an order continuing generally the trial and remaining pretrial deadlines. (Doc. # 100.) With that procedural background in mind, the court turns to the jurisdictional analysis.

## II.  STANDARD OF REVIEW

### A.  <u>Original Subject-Matter Jurisdiction</u>

"[A] federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see also* Fed. R. Civ. P. 12(h)(3). The district court may dismiss for lack of subject-matter jurisdiction on any of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981.)[4] In a facial attack, the court examines whether the complaint has sufficiently alleged subject-matter jurisdiction. As it does when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court, on a Rule 12(b)(1) facial attack, construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts in the complaint as true. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (noting that in a Rule 12(b)(1) facial challenge, a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised").

A factual attack, on the other hand, challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks omitted). "[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, . . . the court may inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

### 1. *Section 1332(a) Diversity Jurisdiction*

"It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Global Grp.*, L.P., 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)). This time-of-filing rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing – whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Id.* at 571.

The party asserting diversity jurisdiction bears the burden to plead "facts demonstrating the existence of jurisdiction." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Diversity jurisdiction "requires complete diversity – every plaintiff must be diverse from every defendant." *Palmer v. Hosp Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor*, 30 F.3d at 1367. The same requirement applies to a corporation, because "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

### 2. *Section 1334(b) "Relating to" Bankruptcy Jurisdiction*

> The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (the *Pacor* test)). The *Pacor* test is applied by looking to the facts that existed at the time the party seeking § 1334(b) jurisdiction filed its civil claim that allegedly "relates to" bankruptcy. *Id.* at 788 & n.20; *see also Grupo Dataflux*, 541 U.S. at 570.

### B. Section 1367 Supplemental Jurisdiction

In cases where a federal district court has original subject-matter jurisdiction, 28 U.S.C. § 1367(a) states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "[W]henever a federal court has supplemental jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies." *Palmer*, 22 F.3d at 1569. However, "[§] 1367(c) gives a court

*discretion* to dismiss a supplemental claim or party when 'the district court has dismissed all claims over which it has original jurisdiction.'" *Id.* at 1568 (quoting § 1367(c)(3)). "[Section 1367] reflects a dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006).

### III.  DISCUSSION

In prior orders, RBC Bank's "jurisdiction-invoking" claims were resolved and dismissed. The court, thus, must determine now whether it retains jurisdiction over the remaining controversy. Part III.A begins with examination of the parties' original jurisdiction arguments. Analysis concludes in Part III.B with the discretionary decision to retain supplemental jurisdiction over the remaining claims.

### A.  Original Jurisdiction under §§ 1332(a) and 1334(b)

It is undisputed that, when this case was filed, the court had diversity jurisdiction over the state law claims of RBC Bank, a North Carolina citizen, against Mr. Kindrick and CMI, Alabama citizens. (Doc. # 89, at 2.) Further, it is undisputed that during the pendency of RBC Bank's claims, the court exercised supplemental jurisdiction over Mr. Kindrick's state law crossclaims and third-party claims against Remaining Defendants, as well as Remaining Defendants' state law crossclaims and

counterclaims against Mr. Kindrick.  *See* § 1367(a); Fed. R. Civ. P. 14(a)(1); 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, Federal Practice and Procedure § 3567.1, at 343 (3d ed. 2008) ("[I]f one concludes that a claim satisfies the "transaction or occurrence" test of one of the Civil Rules, it will satisfy 1367(a).").

Perhaps because of the language and citations in the court's show cause order (*See* Doc. # 90), the parties misapprehended the jurisdictional question posed by RBC Bank's anticipated dismissal and the subsequent realignment of the parties.  Rather than arguing whether the court should, in its discretion, retain supplemental jurisdiction over this controversy, the parties instead solely focused on whether the court retains original jurisdiction over the remaining state law claims.  Because dismissal of all claims over which the court exercised original jurisdiction is a predicate to the discretionary supplemental jurisdiction analysis under § 1367(c)(3), the court turns to the original jurisdiction inquiry.

### 1. Section 1332(a)

Regarding the court's diversity jurisdiction, Mr. Kindrick argued for it before he argued against it. (*Compare* Doc. # 94, at 1, *with* Docs. # 91, 93.)  Though Mr. Kindrick expressly abandoned his diversity jurisdiction arguments (*see* Docs. # 91, 93), the court embraces its obligation to *sua sponte* inquire into subject-matter

jurisdiction when it may be lacking. A brief review of the pleadings and evidence shows that Mr. Kindrick has not established the court's diversity jurisdiction over the remaining state law claims. *Univ. of S. Ala.*, 168 F.3d at 410. It is clear from the face of the pleadings that complete diversity did not exist between Remaining Defendants and Mr. Kindrick in March 2009 when he filed his crossclaims and third-party claims. *Palmer*, 22 F.3d at 1564 (Diversity jurisdiction "requires complete diversity – every plaintiff must be diverse from every defendant."); (Doc. # 29, at 2 (admitting that Mr. Kindrick is an Alabama citizen as alleged in ¶ 3 of the Complaint), 7.)

Further, regardless of his requests to dismiss or disregard certain non-diverse parties to create diversity (*See* Docs. # 91, 93), Mr. Kindrick has not established, by his pleading (*See* Doc. # 29, at 8) or by a preponderance of the evidence, that Mr. Branam was domiciled outside of Alabama when he was impleaded in May 2009. *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (Because "[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it." (internal citations and quotation marks omitted)); (Doc. # 67, Ex. 1, at 23 (Mr. Kindrick moved to Montgomery in August 2008.); Doc. # 57, Ex. 2, at 3 (Mr. Kindrick lived in Montgomery, Alabama, as of

November 23, 2009.); *see also* Doc. # 110, at 3.)  Thus, Mr. Kindrick has not established the court's diversity jurisdiction over the remaining state law claims.

### 2. *Section 1334(b)*

On the same day that he argued for diversity jurisdiction, Mr. Kindrick also argued against it, premising jurisdiction on § 1334(b), "**NOT DIVERSITY JURISDICTION.**" (Doc. # 94, at 1.) Mr. Kindrick claims that § 1334(b) jurisdiction is appropriate because "[i]t is undisputed that Mr. Kindrick's claims against the third-parties 'relate to' the CMI bankruptcy estate." (Doc. # 94, at 2.)

In applying the *Pacor* test to determine subject-matter jurisdiction, the court looks to the facts that existed at the time the party seeking § 1334(b) jurisdiction filed its civil claim that allegedly "relates to" bankruptcy. *Lemco Gypsum*, 910 F.2d at 788 & n.20; *see also Grupo Dataflux*, 541 U.S. at 570.  However, Mr. Kindrick filed his crossclaim and third-party claims, pursuant to the court's supplemental jurisdiction, months *before* CMI entered bankruptcy. (Doc. # 9 (filed Mar. 18, 2009); Doc. # 19 (filed May 6, 2009); Doc. # 29 (filed May 12, 2009); *cf. In re CMI Elecs.*, No. 09-bk-32602 (Bankr. M.D. Ala. filed Sept. 24, 2009; closed June 15, 2011).)  Because CMI was not in bankruptcy in March 2009 and May 2009 when Mr. Kindrick brought his claims against Remaining Defendants, or in May 2009 when Remaining Defendants crossclaimed and counterclaimed, § 1334(b) "relating to" jurisdiction was not

invoked. Therefore, Mr. Kindrick has not established the court's jurisdiction pursuant to § 1343(b).

**B.     § 1367(c) and Supplemental Jurisdiction**

Because there is no longer an independent basis for original subject-matter jurisdiction over the remaining state law claims, the court may, in its discretion, decline to exercise supplemental jurisdiction in this matter. § 1367(c); *Palmer*, 22 F.3d at 1568.[5] That discretionary analysis is guided by considerations of "judicial economy, convenience, fairness, and comity." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

Judicial economy, convenience, and fairness all weigh heavily in favor of the court retaining supplemental jurisdiction over the remaining state law claims. This case has been pending in this court for over two-and-a-half years, discovery is complete, and the court is familiar with the facts and complicated procedural posture of this case. It would be inconvenient to both Mr. Kindrick and Remaining Defendants to further delay trial on their claims against each other. Though the procedural posture of this case is complex, the state law causes of action at issue are

---

[5] Though the court briefly cited § 1367(b) in the original show cause order (Doc. # 90), that sub-section does not apply in this situation because Mr. Kindrick brought the third-party claims as a defendant. *See* 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, Federal Practice and Procedure § 3567.2, at 377 (3d ed. 2008) ("Because § 1367(b) does not apply to claims by defendants, it does not block the grant of supplemental jurisdiction over the defendant's third-party claim.").

not. Further, there is no just reason on this record to burden another court with further pre-trial motions and preparation in this matter. Therefore, the court chooses, in its discretion, to exercise supplemental jurisdiction over the remaining state law claims.

### IV.  CONCLUSION

Accordingly, it is ORDERED that Mr. Kindrick's motion for a trial setting (Doc. # 148) is GRANTED. This case is SET for trial during the court's November 7, 2011 Montgomery civil jury trial term. A modified scheduling order detailing the pre-trial deadlines will follow.

The Clerk of the Court is DIRECTED to re-style this case in accordance with the above caption.

DONE this 23rd day of August, 2011.

/s/ W.  Keith Watkins<br>
CHIEF UNITED STATES DISTRICT JUDGE